William D. Hyslop
United States Attorney
Eastern District of Washington
George J.C. Jacobs III
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 18 2019

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELDON L. LEINWEBER,<br><br>Defendant. | **2:19-CR-209-WFN**<br><br>INDICTMENT<br><br>Vio: 21 U.S.C. §§ 841(a)(1),<br>(b)(1)(C), 21 C.F.R. § 1306.04<br>Distribution of Controlled<br>Substances Without Legitimate<br>Medical Purpose<br>(Counts 1 – 4)<br><br>21 U.S.C. § 853<br>Forfeiture Allegations |

The Grand Jury charges:

GENERAL ALLEGATIONS

At All times relevant and material to this Indictment:

1.     Defendant ELDON L. LEINWEBER (hereinafter "LEINWEBER") owned and operated North Central Washington Health, LLC ("NCWH") dba Mansfield Family Medicine ("MFM"), located at 22 West Highway 28, Soap Lake, Washington. MFM is registered as a health facility with the State of Washington Department of Health ("DOH") under license number MTSW.FS.60337040.

INDICTMENT – 1

2. LEINWEBER was a practicing Physician's Assistant who held a Washington Physician's Assistant license (PA10004217) and U.S. Drug Enforcement Administration ("DEA") registration number (ML1154537). As such, LEINWEBER was authorized to prescribe controlled substances for legitimate medical purposes and in the usual course of professional practice.

3. In the State of Washington, a physician's assistant shall practice medicine only under the supervision and control of a physician licensed in this state, but such supervision and control shall not be construed to necessarily require the personal presence of the supervising physician or physicians at the place where services are rendered. WASH. REV. CODE § 18.71A.020(2)(b)(II).

4. The Controlled Substances Act, 21 U.S.C. §§ 841, et seq. ("CSA") governs the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it "unlawful for any person knowingly or intentionally … to manufacture, distribute, or dispense … a controlled substance."

5. The CSA defines a "controlled substance" as a drug or other substance that is included in one of five schedules – Schedules I, II, III, IV, or V – of Subchapter I, Part B of the Act. 21 U.S.C. § 802(6). Drugs or substances are placed into these schedules based on their potential for abuse, among other reasons.

6. "Schedule II" means that the drug or other substance has a currently accepted medical use with severe restrictions and has a high potential for abuse that can lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2).

7. "Oxycodone" is a generic name for a narcotic (opioid) analgesic. It is also sold under the brand name Percocet. Oxycodone is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate

INDICTMENT – 2

medical purpose, oxycodone typically is used for the relief of moderate to severe short-term pain. Oxycodone can be extremely habit-forming. Oxycodone is to be prescribed only when medically required and is to be taken only in a manner prescribed by a licensed medical practitioner for a particular patient.

8. "Hydromorphone" is a generic name for a narcotic (opioid) analgesic. It is also sold under the brand name Dilaudid. Hydromorphone is classified under federal law as a Schedule II controlled substance. When legally prescribed for a legitimate medical purpose, hydromorphone typically is used for the relief of moderate to severe short-term pain. Hydromorphone can be extremely habit-forming. Hydromorphone is to be prescribed only when medically required and is to be taken only in a manner prescribed by a licensed medical practitioner for a particular patient.

9. Pursuant to 21 U.S.C. § 822(b) and 21 C.F.R. § 290.1, the controlled substances listed in Schedules II, III, IV, and V can be dispensed or distributed only by prescriptions by a practitioner registered with the DEA for that purpose. The DEA, as authorized by the CSA, issues registration numbers to qualifying medical practitioners that allow them to issue prescriptions for Schedule II, III, IV, and V controlled substances. Accordingly, controlled substances, such as opioid pain medications, can be dispensed only pursuant to a valid prescription from a medical practitioner authorized by the DEA to distribute controlled substances. 21 C.F.R. § 1306.03.

10. The term "practitioner" meant a medical doctor, dentist, or other person licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he or she practiced, to distribute or dispense a controlled substance in the course of professional practice.

INDICTMENT – 3

11. LEINWEBER was a physician's assistant licensed by the State of Washington Medical Board and considered a "practitioner" within the meaning of the CSA.

12. Individual practitioners who, during times material to this Indictment, wanted to distribute or dispense controlled substances in the course of professional practice were required to register with the Attorney General of the United States ("Attorney General") before they were legally authorized to do so. Such individual practitioners were assigned a registration number by the DEA. LEINWEBER was registered with the Attorney General and DEA under registration number ML1154537.

13. Practitioners registered with the Attorney General were authorized under the CSA to write prescriptions for, or to otherwise dispense, Schedule II, III, IV, and V controlled substances, so long as they complied with the requirements of their registrations. 21 U.S.C. § 822(b).

14. For practitioners, compliance with the terms of their registration meant that they could issue a prescription for a controlled substance to a patient only if the prescription was "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice." 21 C.F.R. § 1306.04(a). A practitioner violates the CSA and Code of Federal Regulations if he or she issues a prescription for a controlled substance outside the usual course of professional medical practice and not for a legitimate medical purpose. Such knowing and intentional violations subjected the practitioner to criminal liability under 21 U.S.C. § 841(a) and 21 C.F.R. § 1306.04(a).

15. Pursuant to 21 C.F.R. § 1306.12, the refilling of a prescription for a Schedule II controlled substance is prohibited. However, a practitioner may issue multiple prescriptions authorizing a patient to receive a total of up to a 90-day supply of a Schedule II controlled substance if these and other conditions are met:

INDICTMENT – 4

(1) each separate prescription is issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice; (2) the practitioner provides written instructions on each prescription (other than the first prescription, if the prescribing practitioner intends for that prescription to be filled immediately) indicating the earliest date on which a pharmacy may fill each prescription; and (3) the practitioner concludes that providing the patient with multiple prescriptions in this manner does not create an undue risk of diversion or abuse. 21 C.F.R. § 1306.12(b)(1).

16. LEINWEBER distributed and dispensed, and caused to be distributed and dispensed, Schedule II controlled substances that were not prescribed for a legitimate medical purpose and not in the usual course of professional practice in the following non-exhaustive manners:

  a. Conducting cursory, incomplete inadequate or no medical examination;

  b. Collecting and reviewing inadequate patient medical history and follow-up verifications;

  c. Conducting insufficient dialogue with the patient regarding treatment options and risks and benefits of such treatments;

  d. Primarily treating patients with highly addictive controlled substances while failing to consider or prescribe other treatment options;

  e. Prescribing highly addictive controlled substances despite inadequate diagnostic testing;

  f. Prescribing highly addictive controlled substances to patients who complained of undocumented or uncorroborated physical ailments where lesser treatment options would be indicated;

  g. Failing to assess the risk of abuse for individual customers;

INDICTMENT – 5

h. Failing to monitor the patients' responses to the medication or compliance with medical usage;

i. Failing to query the Prescription Monitoring Program; and

j. Failing to take a history of drug or alcohol abuse for individual patients.

## SPECIFIC ALLEGATIONS

## COUNTS 1 - 4

17. Paragraphs 1 through 16 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

18. On or about the dates set forth below, in the Eastern District of Washington, the Defendant, ELDON L. LEINWEBER, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, a mixture and substance containing a detectable amount of a Schedule II controlled substance (Oxycodone, Hydromorphone), as listed below, by issuing "prescriptions" without a legitimate medical purpose and outside the usual course of professional practice, each of which constitutes a separate count of this Information:

| COUNT | Approximate Distribution Date | Name on Prescription | Controlled Substance | Quantity |
|---|---|---|---|---|
| 1 | 3/19/2019 | P.D. | Percocet 5/325mg | 30 pills |
| 2 | 3/19/2019 | Jane Doe | Dilaudid 8mg | 140 pills |
| 3 | 4/16/2019 | P.D. | Percocet 5/325mg | 30 pills |
| 4 | 4/16/2019 | P.D. | Percocet 5/325mg | 30 pills |

All in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), 21 C.F.R. § 1306.04.

INDICTMENT – 6

NOTICE OF CRIMINAL FORFEITURE ALLEGATIONS

The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures.

Pursuant to 21 U.S.C. § 853, upon conviction of an offense(s) in violation of 21 U.S.C. § 841 as set forth this Indictment, Defendant ELDON L. LEINWEBER shall forfeit to the United States of America, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense(s) and any property used or intended to be used, in any manner or part, to commit or to facilitate the commission of the offense(s).

If any of the property described above, as a result of any act or omission of the Defendant(s):

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

DATED this 17 day of December, 2019.

William D. Hyslop
United States Attorney

George J.C. Jacobs III
Assistant United States Attorney

INDICTMENT – 7